IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KENNETH HARRIS, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. |
| v. | ) | |
| | ) | |
| JOSE SANDOVAL, | ) | |
| in his individual capacity | ) | |
| | ) | |
| ROBERTO VERDIN, | ) | |
| in his individual capacity, | ) | |
| | ) | |
| CITY OF CHICAGO, | ) | |
| ILLINOIS | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT**

Plaintiff Kenneth Harris, for his complaint against Defendants Jose Sandoval, Roberto Verdin, and the City of Chicago, Illinois, states the following on information and belief:

**CAUSE OF ACTION**

1. This is an action for damages, brought pursuant to 42 U.S.C. § 1983 and 1988, the Fourth Amendment to the United States Constitution, and under the laws of the State of Illinois, against Jose Sandoval of the City of Chicago, Illinois, in his individual capacity; Roberto Verdin, of the City of Chicago, Illinois, in his individual capacity and the City of Chicago, Illinois.

2. On June 10, 2012, Plaintiff Kenneth Harris (hereinafter referred to as "Mr. Harris"), then twenty years old, was stopped by Chicago police officers Jose Sandoval and Roberto Verdin (hereinafter referred to as "Defendant Officers") for a minor traffic violation.

3. At some point during the course of the stop, a brief foot chase ensued in which Mr. Harris was apprehended and beaten by Defendant Officers who apprehended him.

4. Mr. Harris alleges that these constitutional violations were committed as a result of the policies and customs of the City of Chicago, Illinois.

5. As a result of the misconduct of Defendant Officers, Mr. Harris suffered severe personal, physical, and emotional injury.

## JURISDICTION AND VENUE

6. This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 over Mr. Harris's cause of action arising under the Constitution of the United States; 42 U.S.C. § 1983 and § 1988 (the Civil Rights Act of 1871); and the laws of the State of Illinois, to redress deprivations of the civil rights of Mr. Harris, accomplished by acts and/or omissions of the Defendant Officers and committed under color of state law.

7. This Court has supplemental jurisdiction over Mr. Harris's causes of action arising under the Illinois state law pursuant to 28 U.S.C. § 1367.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391, in that all of the claims and events giving rise to this action occurred in this district.

## PARTIES

9. The Plaintiff, Mr. Harris, is a United States citizen and a resident of the State of Illinois, County of Cook.

10. At all relevant times herein referenced, Defendant Jose Sandoval ("Sandoval") was employed by the City of Chicago as a sworn police officer. He is being sued in his individual capacity. At the time of the incident in this complaint, Sandoval was engaged in the

conduct complained of while acting within the scope of his employment and under color of state law.

11. At all relevant times herein referenced, Defendant Roberto Verdin ("Verdin") was employed as a sworn police officer by the City of Chicago. He is being sued in his individual capacity. At the time of the incident in this complaint, Verdin was engaged in the conduct complained of while acting within the scope of his employment and under color of state law.

12. At all times relevant herein, Defendant City of Chicago, was and is a municipal corporation duly incorporated under the laws of the State of Illinois, and is the employer and principal of Defendants Officers.

## BACKGROUND

13. On June 10, 2012, Mr. Harris, then twenty years old, was driving his vehicle when he was pulled over by Defendant Officers for a minor traffic violation, near the intersection of Jackson and Maplewood, in the City of Chicago.

14. When Mr. Harris was stopped, the Defendant Officers approached Mr. Harris's vehicle, one Defendant Officer approached his driver's side door.

15. Upon reaching his car, the Defendant Officer did not ask Mr. Harris to produce his drivers license or proof of insurance, instead, the Defendant Officer ordered Mr. Harris to get out of the vehicle.

16. Before Mr. Harris could respond or comply with the order, the Defendant Officer opened the driver's side door, grabbed Mr. Harris's forearm and proceeded to pull Mr. Harris out of the vehicle.

17. Once outside of his vehicle, Defendant Officer took Mr. Harris to the trunk of his vehicle, while the other Defendant Officer entered Mr. Harris's vehicle and began to conduct a search.

18. When Mr. Harris reached the trunk of his vehicle, he was instructed to place his hands on the trunk.

19. When Mr. Harris placed his hands on trunk, the Defendant Officer immediately grabbed both hands backwards and placed them in handcuffs.

20. After placing Mr. Harris in handcuffs, the Defendant Officer grabbed Mr. Harris by his left arm and turned Mr. Harris around to face him.

21. Mr. Harris cooperated and did not attempt to resist arrest during this handcuffing period.

22. Immediately after turning Mr. Harris around, the Defendant Officer asked Mr. Harris to spread his legs and Mr. Harris complied.

23. Once Mr. Harris legs were spread, the Defendant Officer patted down Mr. Harris's pants and two clear plastic bags of cannabis fell out of his pants and onto the ground.

24. Upon the discovery of the cannabis on the ground, Mr. Harris asked the Defendant Officer if he was going to take him to jail for the two bags of cannabis, to which the Defendant Officer replied: "Fuck yeah."

25. Mr. Harris then asked the Defendant Officer to take off his (Mr. Harris's) diamond earrings for safekeeping and at some point, while the Defendant Officer was removing the earrings, Mr. Harris took off running.

26. A brief foot chase ensued, during which time, Mr. Harris slipped and fell on the ground in an adjacent open lot.

27. Although his hands were handcuffed behind him, Mr. Harris's face did not make contact with the ground, because he was moving at a slower rate of speed due to his hands being handcuffed behind his back and as a result, he was able to brace the fall with his shoulder. In addition, upon falling to the ground, Mr. Harris did not sustain any injury to his face.

28. While on the ground, Mr. Harris observed both Defendant Officers running towards him and heard one of the Defendant Officers yell: "don't fucking move."

29. Mr. Harris complied with the order, stayed on the ground, and did not make any attempt to get up.

30. In spite of his inability to further flee, Mr. Harris felt a severe blow to the left side of his face and lost consciousness after he had observed one of the Defendant Officers boots running up to and only a few inches away from his face.

31. When Mr. Harris regained consciousness, he was lying in the back seat of the Defendant Officers' police squad car, with blood profusely running down his chest from his face.

32. Almost immediately after regaining consciousness in the police squad car, Mr. Harris lost consciousness again.

33. The Defendant Officers transported Mr. Harris to the Mt. Sinai Hospital for treatment of his injuries.

34. The next time Mr. Harris regained consciousness, he was lying in a hospital bed and overheard a female voice asking questions and the Defendant Officers answering for him.

35. Mr. Harris lost consciousness again, while lying on the hospital bed.

36. Mr. Harris subsequently became fully conscious as a treating nurse stitched his left eye.

37. Mr. Harris observed two of the Defendant Officers in the room during the stitching of his left eye and proceeded to ask why they had beaten him. It was at this time that one of the Defendant Officers responded: "You fucked yourself up."

38. By the time Mr. Harris left the hospital, he had significant injuries to his face as well as a closed, swollen, and blackened left eye.

39. Although Defendant Officers charged Mr. Harris with, *inter alia*, attempted escape from a police officer, Mr. Harris was never charged with resisting a police officer or any other violent charge.

40. In fact, the police report of this alleged incident acknowledges Mr. Harris's facial injuries, but describes the injuries as "minor lacerations to the face" caused by Mr. Harris's fall.

41. Mr. Harris alleges that the beating he suffered at the hands of the Defendant Officers was a violation of his constitutional rights.

42. Mr. Harris alleges that these constitutional violations were committed as a result of practices and customs of the Chicago Police Department in the City of Chicago, Illinois.

43. As a result of the Defendant Officers misconduct, Mr. Harris suffered violations of his constitutional rights, as well as, severe personal, physical, mental, and emotional injuries.

44. As a direct and proximate result of the willful, wanton, and malicious actions of the Defendant Officers, Mr. Harris suffered the following injuries and damages:

    a. Violation of his constitutional rights under the Fourth Amendment to the United States Constitution;

    b. Loss of his physical liberty;

    c. Physical, mental and emotional trauma.

45. At all relevant times, Defendant Officers were acting under color of state law and under color of authority as police officers, employees, and agents or servants of the City of Chicago, Illinois.

## COUNT 1

*42 U.S.C. §1983 Excessive Force in violation of the Fourth Amendment*

*Against Defendants Sandoval and Verdin*

46. The Plaintiff, Mr. Harris, re-alleges and incorporates herein the allegations of paragraphs 1 through 45 as his respective allegations of paragraph 46 of Count I.

47. At the time of the complained of events, Mr. Harris had a clearly established constitutional right under the Fourth Amendment to be secure in his person from unreasonable seizure through excessive force.

48. Any reasonable police officer knew or should have known of these rights at the time of the complained of conduct as they were clearly established at that time.

49. Defendant Officers' actions and use of force as described herein, were objectively unreasonable in light of the facts and circumstances confronting them and violated the Fourth Amendment right of Mr. Harris.

50. Defendant Officers unlawfully seized Mr. Harris by means of objectively unreasonable physical force, thereby unreasonably restraining Mr. Harris of his freedom.

51. As a direct and proximate consequence of said conduct of Defendant Officers, Mr. Harris suffered violations of his constitutional rights, personal and physical injuries, monetary expenses, fear, emotional distress, and other injuries.

**COUNT II**

*42 U.S.C. § 1983 Monell Claim Against The City of Chicago*

52. The Plaintiff Mr. Harris re-alleges and incorporates herein the allegations of paragraphs 1 through 51 as his respective allegations of paragraph 52 of Count II.

53. Prior to June 10, 2012, the City of Chicago developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of persons in the City of Chicago, which caused the violation of Mr. Harris's rights.

54. It was the policy and/or custom of the City of Chicago to fail to exercise reasonable care in hiring and training its police officers, including Defendant Officers, thereby failing to adequately prevent constitutional violations on the part of its police officers.

55. It was the policy and/or custom of the City of Chicago to inadequately supervise and train its police officers, including Defendant Officers, thereby failing to adequately discourage further constitutional violations on the part of its police officers.

56. As a result of the above described policies and customs, police officers of the City of Chicago, including Defendant Officers, believed that their actions would not be properly monitored by supervisory officers and that their misconduct would not be investigated or sanctioned, but would be tolerated.

57. The above described polices and customs demonstrate a deliberate indifference on the part of the City of Chicago to the constitutional rights of persons within the City of Chicago, and were the cause of the violations of Mr. Harris's rights alleged herein.

58. Mr. Harris believes that the aforementioned allegation in this count (Count II) will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

## COUNT III

### *Indemnification Pursuant to 745 ILCS 10/9-102*

### *(Against the City of Chicago)*

59. The Plaintiff Mr. Harris re-alleges and incorporates herein the allegations of paragraphs 1 through 58 as his respective allegations of paragraph 59 of Count III.

60. The misconduct of Defendant Officers were committed in the scope of their employment with the Defendant City of Chicago.

61. Pursuant to the Illinois Tort Immunity Act, 745 ILCS 10/9-402, Defendant City of Chicago is liable for any judgments for compensatory damages in this case arising from the actions of Defendant Officers.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands the following relief, jointly and severally, against all the defendants:

A. Compensatory damages with respect to all counts.

B. Punitive damages with respect to Defendant Officers in their individual capacities and to be sure, with respect to only Counts I.

C. Attorney's fees pursuant to 42 U.S.C. § 1988. Award Plaintiff's counsel reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable provisions of law.

D. Such other and further relief as this Court may deem appropriate under the circumstances.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial, pursuant to the Seventh Amendment to the Constitution of the United States, as to all claims for damages.

                                          Respectfully submitted,

                                          /s/ Nnanenyem E. Uche

                                          Nnanenyem E. Uche
                                          Uche P.C.
                                          201 E. Ohio St., Suite 310
                                          Chicago, IL 60611
                                          Tel: (312) 380-5341
                                          Fax: (312) 262-7222
                                          Attorney No.: 6294606
                                          Email: nenye.uche@uchelitigation.com