IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KENNETH HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 14-cv-4271 |
| | ) | |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| JOSE SANDOVAL, in his individual capacity, | ) | |
| ROBERTO VERDIN, in his individual capacity, | ) | |
| and the CITY OF CHICAGO, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Kenneth Harris brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged excessive force used by Chicago Police Officers Jose Sandoval and Roberto Verdin in violation of his rights under the Fourth Amendment. Plaintiff also asserts a *Monell* claim against the City of Chicago for policies or customs that allegedly caused the violation of his rights. Before the Court is the City of Chicago's motion to dismiss [20] the *Monell* claim (Count II) under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the Court grants the motion [20], in part, and dismisses Count II without prejudice. Plaintiff may file an amended complaint within 28 days of the date of this Order.

**I.     Background[1]**

On June 20, 2012, Plaintiff Kenneth Harris, a 20-year-old resident of Illinois, was pulled over by Chicago Police Officers Sandoval and Verdin (the "Defendant Officers") for a minor traffic violation. [1], Compl. ¶ 13. Plaintiff was ordered out of his car, but before he could

---

[1] In reviewing the instant motion, the Court accepts as true the facts alleged in Plaintiff's complaint and makes all reasonable inferences in his favor. See, *e.g.*, *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 879 (7th Cir. 2012).

respond, one of the Defendant Officers opened his driver's side door and pulled him out of the car. *Id.* at ¶¶ 15–16. Plaintiff was taken to the trunk of his car, handcuffed, and patted down, while the other Defendant Officer searched the car. See *id.* at ¶¶ 17–23. Two clear plastic bags containing cannabis were discovered, and one of the Defendant Officers indicated that Plaintiff would be taken to jail. See *id.* at ¶¶ 23–24. Plaintiff then asked the Officer to remove his diamond earrings for safekeeping. *Id.* at ¶ 25. As the Officer was removing Plaintiff's earrings, Plaintiff began running away from the scene (still handcuffed), but quickly slipped and fell in an open lot. See *id.* at ¶¶ 25–26. Plaintiff's face did not hit the ground, because Plaintiff was able to brace the fall with his shoulder. *Id.* at ¶ 27. The Officers approached him, and one yelled, "don't fucking move." *Id.* at ¶ 28. Plaintiff complied with the order and did not make any attempt to get up from the ground. *Id.* at ¶ 29. Plaintiff then felt a severe blow to the left side of his face and lost consciousness. *Id.* at ¶ 30.

Plaintiff was in and out of consciousness as he was taken to Mt. Sinai Hospital for treatment of his injuries from the beating. See [1], Compl. ¶¶ 30–35. He did not fully regain consciousness until a nurse at the hospital began applying stiches to his left eye. *Id.* at ¶ 36. The Defendant Officers sat in the room while Plaintiff's eye was stitched. See *id.* at ¶ 37. Plaintiff asked why the Officers had beaten him, and one of the Officers responded, "You fucked yourself up." *Id.* Plaintiff was not charged with resisting a police officer or any other violent charge; he only was charged with attempting to escape from a police officer. *Id.* at ¶ 39. Although Plaintiff had significant injuries to his face, and a swollen, blackened eye, the police report describing the incident stated that Plaintiff had only "minor lacerations to the face" caused by his fall while running from the Defendant Officers. See *id.* at ¶¶ 38, 40.

Plaintiff filed suit against the Officers and the City of Chicago on June 9, 2014. Plaintiff sues the Officers in their individual capacities and alleges that they violated his Fourth Amendment right to be free from excessive force (Count I). In Count II, Plaintiff brings a *Monell* claim against the City of Chicago and alleges that the City developed and maintained several policies or customs that caused his injuries. See *id.* at ¶ 53. Specifically, Plaintiff alleges that it was the policy and/or custom of the City of Chicago to fail to exercise reasonable care in hiring and training its police officers and to inadequately supervise and train police officers. *Id.* at ¶¶ 54–56. Such polices or customs allegedly fail to prevent and discourage constitutional violations by police officers, because officers believe that their actions and misconduct will be tolerated, as opposed to properly investigated and sanctioned. See *id.* Plaintiff further alleges that his policy and custom allegations "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." *Id.* at ¶ 58. Finally, in Count III, Plaintiff alleges that the City is liable for any compensatory damages that he recovers for the Defendant Officers' actions pursuant to the Illinois Tort Immunity Act, 745 ILCS 10/9-402. *Id.* at ¶¶ 60–61.

## II. Legal Standard

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint, not the merits of the case. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). In reviewing a motion to dismiss under Rule 12(b)(6), the Court takes as true all factual allegations in Plaintiff's complaint and draws all reasonable inferences in his favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). To survive a Rule 12(b)(6) motion to dismiss, the claim first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is

given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the claim must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). However, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the * * * claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555) (ellipsis in original). The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011); cf. *Scott v. City of Chi.*, 195 F.3d 950, 952 (7th Cir. 1999) ("Whether a complaint provides notice, however, is determined by looking at the complaint as a whole."). The Seventh Circuit further has explained that the plaintiff must allege "enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). A complex case requires a greater level of detail to survive a motion to dismiss, "both to give the opposing party notice of what the case is all about and to show how, in the plaintiff's mind at least, the dots should be connected." *Id.* at 405.

### III. Discussion

In Count II, Plaintiff brings a *Monell* claim against the City pursuant to 42 U.S.C. § 1983. In *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978), the Supreme Court established that "a municipality cannot be held liable under § 1983 on a *respondeat superior*

4

theory." Rather, a municipality only is liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell*, 436 U.S. at 694. To proceed against the City, Plaintiff therefore must allege at least one of the following: that "(1) the City had an express municipal policy that, when enforced, causes a constitutional deprivation; (2) the City had a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage within the force of law; or (3) [P]laintiff's constitutional injury was caused by a person with final policymaking authority." *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000). There is no heightened pleading standard for municipal liability claims. *Id.* at 323.

Plaintiff does not allege an express policy or that his injury was caused by a policymaker. Instead, Plaintiff contends that the City developed and maintained policies and/or customs of inadequate supervision, training, and hiring of police officers, which allegedly caused the violation of his Fourth Amendment rights. See [1], Compl. ¶¶ 53–56. The City moves to dismiss, arguing that Plaintiff's custom and policy allegations are too conclusory to meet the federal pleading standard as set forth in *Iqbal*. For the reasons that follow, the Court agrees.

When a plaintiff complains of customs, widespread practices, or omissions in policies (as opposed to written or express policies) that allegedly cause a constitutional violation, the plaintiff must establish that "there is a true municipal policy at issue, not a random event" or an "isolated incident." See *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005). Such a claim "requires more evidence than a single incident to establish liability." *Id.* In the context of a failure to train theory of liability, the Supreme Court also has emphasized that a single incident of misconduct

5

usually is insufficient to establish a policy or custom under § 1983. In particular, the Court in *Connick v. Thompson*, 131 S. Ct. 1350 (2011), explained:

> A *pattern of similar constitutional violations* by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train. Policymakers' "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability." Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.

131 S. Ct. at 1360 (internal citations omitted) (emphasis added).

A plaintiff further must show that the municipality was deliberately indifferent to the consequences of inadequate training or supervision. See *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1029 (7th Cir. 2006) ("Establishing *Monell* liability based on evidence of inadequate training or supervision requires proof of 'deliberate indifference' on the part of the local government."); *Calhoun*, 408 F.3d at 380 (observing that a *Monell* claim based on a city's failure to adequately train police officers requires proof that "the inadequacies resulted from conscious choice—that is, proof that the policymakers deliberately chose a training program which would prove inadequate.") (quoting *Okla. v. Tuttle*, 471 U.S. 808, 823 (1985)). Deliberate indifference may be established by showing the municipality's "failure to provide adequate training in light of foreseeable consequences; or [ ] [a] failure to act in response to repeated complaints of constitutional violations by its officers." *Sornberger*, 434 F.3d at 1029–30.

The foregoing authority renders Plaintiff's policy and custom allegations insufficient to support a *Monell* claim, as currently alleged. Although Plaintiff avers that the City's policies or customs with respect to training, supervising, and hiring police officers "exhibit[ed] deliberate indifference to the constitutional rights of persons in the City of Chicago, [and] caused the

6

violation of [Plaintiff's] rights," [1], Compl. ¶ 53, Plaintiff does not include any accompanying facts—aside from his own, single experience of alleged excessive force—in support. That is, Plaintiff does not allege other similar constitutional violations from which a plausible inference could be drawn that the City deliberately implemented inadequate training, hiring, or supervisory policies or customs that caused police misconduct, including the alleged beating that Plaintiff suffered. Instead, Plaintiff merely states that the City's customs or policies cause police officers to believe that misconduct will be tolerated.

Without more, these allegations are insufficient "to present a story that holds together," *Swanson*, 614 F.3d at 404, of the City of Chicago's deliberate indifference to the constitutional rights of people in Chicago. It simply is not plausible, in this context, to infer such deliberate indifference without sufficient allegations of a pattern of similar constitutional violations. See, *e.g.*, *Winchester v. Marketti*, 2012 WL 2076375, at *4 (N.D. Ill. June 8, 2012) (dismissing *Monell* claim alleging failure to adequately train and discipline officers because the plaintiff "ma[de] no attempt to plead a pattern of similar constitutional violations with any degree of factual specificity."). Dismissal of this claim also is consistent with how courts in this district approach similarly deficient *Monell* claims. See, *e.g.*, *Starks v. City of Waukegan*, 946 F. Supp. 2d 780, 793 (N.D. Ill. 2013) (dismissing *Monell* claim based on city's alleged failure to train police officers, because the plaintiff alleged only boilerplate policy, practice, and custom allegations); *Kowalski v. Cnty. of DuPage*, Ill., 2013 WL 4027049, at *2 (N.D. Ill. Aug. 7, 2013) (dismissing *Monell* claim alleging failure to properly train and supervise officers on appropriate levels of force, because plaintiff only alleged the single incident that he was involved in to support his policy allegations); *Winchester*, 2012 WL 2076375, at *4 (dismissing *Monell* claim and instructing plaintiff to "give more details concerning other similar constitutional violations

7

that have occurred at the [ ] Jail such that Defendants' deliberate indifference to the consequences of a failed training program can be plausibly inferred.").

Having determined that Count II should be dismissed, the Court now turns to the remaining question of whether Plaintiff should be given an opportunity to file an amended complaint. Defendant requests that the complaint be dismissed with prejudice, but provides no reason for not allowing at least one opportunity to file an amended complaint. Plaintiff has asked for an opportunity to replead in the event that the Court grants Defendant's motion. As Plaintiff correctly observes, "[w]hen a complaint fails to state a claim for relief, the plaintiff should ordinarily be given an opportunity, at least upon request, to amend the complaint to correct the problem if possible." *Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013). As this is Plaintiff's first complaint, and he has specifically requested leave to amend, the Court will allow Plaintiff to file an amended complaint.

## IV. Conclusion

For the reasons set forth above, the Court grants Defendant the City of Chicago's motion to dismiss [20] and dismisses Count II of the complaint without prejudice. If Plaintiff believes that he is able to cure the deficiencies that the Court has described above, he may file an amended complaint within 28 days of the date of this Order.

Dated: April 13, 2015

_____
Robert M. Dow, Jr.
United States District Judge